# IN THE SUPREME COURT OF TEXAS

No. 19-0230

GEORGE FLEMING AND FLEMING & ASSOCIATES, L.L.P., PETITIONERS,

v.

REBECCA WILSON, ET AL., RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS

**PER CURIAM**

JUSTICE BUSBY did not participate in this decision.

Roughly four thousand plaintiffs sued their former attorney and his law firm, asserting claims including breach of contract and fiduciary duty. The attorney and his firm moved for summary judgment based on the affirmative defenses of collateral estoppel, release, and waiver. The trial court granted the defendants' summary-judgment motion. But the court of appeals reversed, holding that the defendants failed to properly authenticate uncertified copies of a prior jury verdict and judgment—documents upon which the summary-judgment motion relied. Because we conclude the trial court did not abuse its discretion by finding the evidence authentic, we reverse the court of appeals' judgment and remand the case to that court to consider issues it did not reach.

George Fleming and his law firm (collectively, Fleming) represented over eight thousand "fen-phen" users in a mass-tort action against the diet pill's manufacturer. Before filing that lawsuit, Fleming spent over $20 million to screen more than 40,000 potential claimants for the specific heart problem the diet pills allegedly caused. After settling the fen-phen claims for around $340 million, Fleming deducted the screening cost before distributing the settlement funds to his eight thousand clients.

About half of the clients then filed this suit against Fleming, alleging he breached his contractual and fiduciary duties by charging them for the screenings he provided to the other 32,000 potential claimants he never represented. Rather than attempt to try all four thousand claims together, the parties agreed to sever and try the claims of six randomly selected plaintiffs (the Harpst plaintiffs) first in a separate cause. At the end of that trial, the jury found against the Harpst plaintiffs, and the trial court entered a final, take-nothing judgment based on that verdict.[1]

Fleming then filed a traditional motion for summary judgment against the remaining plaintiffs (the Wilson plaintiffs), whose claims remained pending in the original cause. The motion asserted that the Wilson plaintiffs waived and released their claims against Fleming when they settled their claims against the fen-phen manufacturer, and alternatively that the verdict and judgment against the Harpst plaintiffs collaterally estops the Wilson plaintiffs from pursuing their claims. As supporting evidence, Fleming attached as exhibits uncertified copies of the jury verdict and the final judgment from the Harpst plaintiffs' trial. Fleming did not submit a supporting affidavit or aver that the copies were "true and correct," but the copies were stamped with a

---

[1] The court of appeals affirmed that judgment. *Harpst v. Fleming*, 566 S.W.3d 898, 901 (Tex. App.—Houston [14th Dist.] 2018, no pet.). The Harpst plaintiffs did not petition this Court for review.

watermark reading "Unofficial Copy Office of Chris Daniel District Clerk" and bore the clerk's typical file stamp.

The Wilson plaintiffs objected that because the copies of the verdict and judgment that Fleming attached to his motion were uncertified and not properly authenticated, they could not support summary judgment. The trial court overruled their objection, granted Fleming's summary-judgment motion without explanation, and dismissed the Wilson plaintiffs' claims with prejudice.

The court of appeals reversed. *Wilson v. Fleming*, 566 S.W.3d 410, 416–20 (Tex. App.—Houston [14th Dist.] 2018). Addressing Fleming's collateral-estoppel defense, the court first agreed with the plaintiffs that the uncertified copies of the Harpst jury verdict and final judgment were not properly authenticated and thus were not competent summary-judgment evidence. *Id.* at 416–17. The court then concluded that it could not presume the trial court took judicial notice of the verdict and judgment because a court may only take judicial notice of documents in its own files if those documents are filed in the same case, and the Harpst case became "a different action" once it was severed and given a separate cause number. *Id.* at 417. Finally, the court reasoned that even if—generally speaking—the trial court could have taken judicial notice of the verdict and judgment, the summary-judgment rule still requires authenticated or certified copies to support a summary judgment. *Id.* For these reasons, the court concluded that Fleming failed to submit competent evidence to establish his collateral-estoppel defense. *Id.* at 418. The court went on to hold that Fleming also failed to conclusively establish his waiver and release defenses, and thus it reversed the grant of summary judgment and remanded the case to the trial court. *Id.* at 427. Fleming filed a petition for review in this Court, and we requested the parties' briefing.

Fleming does not now challenge the court of appeals' holdings on his waiver and release defenses, so we do not address those issues. Fleming argues only that the court of appeals erred in finding his summary-judgment evidence incompetent because (1) the trial court judge was authorized to take judicial notice of the verdict and judgment that he himself received and signed, even if they technically were filed in a "different case," (2) Fleming sufficiently authenticated the documents under rule 901 of the Texas Rules of Evidence, and (3) the Wilson plaintiffs themselves authenticated the documents by attaching to their summary-judgment response a copy of the Harpst plaintiffs' new-trial motion, which in turn incorporated the verdict and judgment by reference. Because we agree with Fleming's second argument, we need not address the other two.

Rules 901 and 902 of the Texas Rules of Evidence govern how a proponent may authenticate or identify evidence. TEX. R. EVID. 901, 902. Rule 901 requires the proponent to "produce evidence sufficient to support a finding that the item is what the proponent claims it is" and then provides a non-exclusive list of examples of such evidence. TEX. R. EVID. 901. Rule 902 provides an exclusive list of certain items that are "self-authenticating" and "require no extrinsic evidence of authenticity in order to be admitted." TEX. R. EVID. 902. For example, a "publication purporting to be issued by a public authority" and "[p]rinted material purporting to be a newspaper or periodical" are self-authenticating. TEX. R. EVID. 902(5)–(6). And so are domestic public documents if they are "sealed and signed" or "signed and certified." TEX. R. EVID. 902(1), (2). Under rule 902, such documents are automatically authenticated.

Because the copies of the Harpst jury verdict and final judgment attached to Fleming's summary-judgment motion were not sealed or certified, they were not self-authenticating. Under rule 901, Fleming thus had to "produce evidence sufficient to support a finding that" they were

what Fleming claimed they were. TEX. R. EVID. 901(a). Relying on this language, the court of appeals held that rule 901 required Fleming to produce *extrinsic* evidence, outside of and in addition to the documents themselves. 566 S.W.3d at 418. Otherwise, the court reasoned, rule 901 would render rule 902 "immaterial" because an item of evidence that does not meet the self-authenticating qualifications under rule 902 could still be self-authenticating under rule 901. *Id.*

We disagree. Rule 901 provides a non-exclusive list of examples of the types of evidence a proponent can use to authenticate an item, such as the testimony of a witness with knowledge of the item. TEX. R. EVID. 901(b)(1). Some of these examples indicate the need for *extrinsic* evidence, like opinion testimony comparing the item with a "specimen" the court has deemed genuine or identifying a person's voice. TEX. R. EVID. 901(b)(3), (5). Other examples, however, do not require or contemplate the need for extrinsic evidence. Subsection (b)(4), for example, provides that the "appearance, contents, substance, internal patterns, or other distinctive characteristics *of the item*, taken together with all the circumstances," may "satisf[y] the [authentication] requirement." TEX. R. EVID. 901(b)(4) (emphasis added). Similarly, subsection (b)(7) recognizes that public records may be authenticated with evidence that they were "filed in a public office as authorized by law" or are "from the office where items of this kind are kept," without suggesting that such evidence cannot be found on or within the item itself. TEX. R. EVID. 901(b)(7).

As the court of appeals accurately observed, rule 902 states that self-authenticating items "require no extrinsic evidence of authenticity in order to be admitted." TEX. R. EVID. 902. But that does not mean that rule 901 *requires* extrinsic evidence. Unlike rule 901's non-exclusive list, rule 902 provides an exclusive list of items that courts must always accept as authentic, but it does not preclude courts from accepting other items that demonstrate on their face that they are what the

proponent claims they are. Rule 901's route to authentication is less open-and-shut. It requires the trial court to evaluate the evidence that supports the item's authenticity—whether found within the item itself or provided by an extrinsic source. If the proponent produces only the item, but the item itself constitutes or contains evidence that it is what the proponent claims it is, the court may find it to be authentic.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005). In the Wilson plaintiffs' case, Fleming produced uncertified copies of the Harpst jury verdict and final judgment, which the trial court judge had himself received and signed in the Harpst plaintiffs' case. The documents bore a diagonal watermark from the district clerk's office, a stamp and signature noting when they were filed in the clerk's office, and the trial judge's own signature. The Wilson plaintiffs never suggested that the documents were faked, forged, or altered, but instead complained only that they were not certified copies. Considering the documents' "appearance, contents, substance, . . . [and] other distinctive characteristics," taken "together with all the circumstances," we cannot say that the trial court abused its discretion by accepting the documents as authentic. TEX. R. EVID. 901(b)(4).

We also conclude that the trial court could permissibly have concluded that the documents were authentic under rule 901(b)(7), which recognizes that public documents may be authenticated by evidence that they were "recorded or filed in a public office as authorized by law" or are "from the office where items of this kind are kept." TEX. R. EVID. 901(b)(7). While a certified copy of a public record would automatically be self-authenticating, TEX. R. EVID. 902(4), an uncertified copy of a public record could itself contain sufficient evidence that it was filed or kept in a public office. *See* TEX. R. EVID. 901(a). Here, the watermark and file stamp from the district clerk's office

on the documents qualify as sufficient evidence, so the trial court did not abuse its discretion by finding them authentic.

The Wilson plaintiffs argue, however, that even if the documents were authentic, they still could not qualify as competent summary-judgment evidence unless they were sworn or certified. In support, they rely on procedural rule 166a(f), which requires parties to attach or serve "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit" submitted to support or oppose a summary-judgment motion. *See* TEX. R. CIV. P. 166a(f). But Fleming did not provide copies of the Harpst verdict and judgment as affidavit attachments. Instead, he submitted them as copies of public records, which rule 166a(c) permits courts to rely on if they are "authenticated or certified." *See* TEX. R. CIV. P. 166a(c). If, as we have held, the trial court acted within its discretion by finding the documents authentic, rule 166a(c) permitted the court to consider the documents in deciding the summary-judgment motion.

Having held that Fleming did not properly authenticate the copies of the Harpst jury verdict and final judgment, the court of appeals did not reach the issue of whether, in light of that evidence, collateral estoppel bars the Wilson plaintiffs' claims. We hold that the trial court did not abuse its discretion by finding the documents authentic and competent as summary-judgment evidence, also without reaching the collateral-estoppel issue. Without hearing oral argument, TEX. R. APP. P. 59.1, we grant Fleming's petition for review, reverse the court of appeals' judgment, and remand the case to the court of appeals to consider the issues it did not reach.

Opinion delivered: October 9, 2020